UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO JOSE MORALES,<br><br>    Plaintiff,<br><br>    vs.<br><br>HEZEKIAH SHERWOOD, *et al.*,<br><br>    Defendants. | Case No. 1:13-cv-01582-DAD-EPG-PC<br><br>**FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED ON FAILURE TO EXHAUST CLAIMS BE GRANTED AND PLAINTIFF'S CASE BE DISMISSED WITHOUT PREJUDICE**<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS<br><br>(ECF No. 48) |

## I. INTRODUCTION

Alejandro Morales ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action. Plaintiff filed his initial Complaint on October 1, 2013 and the current operative version of the Complaint is the Third Amended Complaint (the "TAC"), as narrowed by the Court's screening order on May 29, 2015. (ECF Nos. 1, 27, 32.) The TAC alleges three claims against Defendants Hezekiah Sherwood, Greg Coontz, and Ruben Felix ("Defendants") under 42 U.S.C. § 1983.

On October 7, 2015, Defendants filed a motion for summary judgment under Federal Rule of Civil Procedure 56 arguing that the undisputed facts show that Plaintiff failed to

exhaust his available administrative remedies with respect to the allegations in the TAC before filing the complaint in this case, which is now before this Court. (ECF No. 46.)[1]

The Court heard argument on this motion on May 19, 2016. During that conference, the Court requested further briefing from the parties on the issue of whether any dismissal would be without prejudice. Defendants have confirmed that they seek dismissal *without* prejudice, and make clear that Plaintiff may refile this complaint after dismissal now that the grievance process has concluded. (ECF No. 74.)

## II.    PLAINTIFF'S ALLEGATIONS

The events alleged in the TAC occurred while Plaintiff was incarcerated at the California Correctional Institution in Tehachapi, California ("CCI"). Shortly after Plaintiff arrived in Tehachapi, on July 13, 2012, he alleges that Defendant Sherwood, a correctional officer, called out to Plaintiff: "Hey, you long hair faggot, come here." When Plaintiff complied, Sherwood pushed Plaintiff up against a wall and forced his head and face into the wall with enough force to chip Plaintiff's tooth. Plaintiff complained to Sherwood, but Sherwood told Plaintiff that "if he did not keep his mouth shut, him and his 'boys' would fuck him up good." Plaintiff did not file a grievance at the time because he was told by other inmates that Sherwood would beat him in retaliation.

On July 23, 2012, however, Plaintiff filed an inmate health care appeal to have his chipped tooth fixed. After Sherwood became aware of the appeal, he accused Plaintiff of "snitching on him" and slapped him in the face repeatedly. Plaintiff went outside, where he

---

[1] On October 22, 2015, Plaintiff filed an opposition to the motion. (ECF No. 50.) Plaintiff also filed a "Motion to the Court Submitting Evidence of Exhaustion of Administrative Remedies Request to Proceed with Discovery" on December 13, 2015. (ECF No. 48.) This "motion" appears to be an opposition brief responding to Defendants' Motion to Stay Discovery from October 1, 2015. (ECF No. 45.) The Motion to Stay Discovery was denied on February 26, 2015. (ECF No. 58.) Defendants filed a reply brief on November 12, 2015. (ECF No. 53.) Plaintiff filed a second opposition brief on November 25, 2015, which responded to Defendants' reply brief. (ECF No. 54.) Defendants then filed a motion to strike Plaintiff's apparent surreply. (ECF No. 56.) In accordance with Local Rule 230(l), Defendants' Motion was deemed submitted after the time to reply expired (*i.e.*, on November 12, 2015). (ECF No. 52.) Plaintiff was not given leave to file a surreply brief, nor do the Local Rules permit such briefing as a matter of course. Defendants' Motion to Strike (ECF No. 56) is thus GRANTED and Plaintiff's second "opposition" (ECF No. 54) is STRICKEN from the docket.

was confronted by Sherwood and Defendant Coontz.  Sherwood sprayed Plaintiff in the face with pepper spray and took him to the ground.  Sherwood then placed Plaintiff in handcuffs and beat Plaintiff while he was on the ground while Coontz watched.  Plaintiff was then taken to a holding cell in the medical unit.  Sherwood informed Coontz and Defendant Felix that Plaintiff had assaulted him, and the three beat Plaintiff again.  Plaintiff alleges that he passed out and could not breathe.

Plaintiff alleges that Sherwood then filed a Rules Violation Report ("RVR") that claimed that Plaintiff assaulted Sherwood and was pepper sprayed while Sherwood was trying to bring Plaintiff under control.  Plaintiff has filed multiple appeals of the RVR.

### III. SUMMARY OF DISPUTE ON SUMMARY JUDGMENT

The Court previously narrowed the scope of the TAC to include:

- A claim against Defendants Sherwood, Coontz, and Felix for excessive force;
- A claim against Defendant Sherwood for retaliation; and,
- A claim against Defendant Coontz for failure to protect.

(ECF Nos. 31, 32.)

All three Defendants now move for summary judgment as to all claims, asserting that Plaintiff had not, at the time he filed his initial Complaint, exhausted his administrative remedies.  In particular, Defendants contend that during the relevant time period, Plaintiff only filed two non-medical appeals.  Neither of these two appeals had been accepted for review at the final level of appeals at the time Plaintiff filed his Complaint.

Plaintiff responds that:  (1) the California Code of Regulations provides that the California Department of Corrections and Rehabilitation ("CDCR") must respond to an appeal at the final level of appeals within 60 days; (2) CDCR did not respond to Plaintiff's final level appeals within the 60 day period, so the appeals were effectively denied; and (3) Plaintiff was forced into filing the Complaint before he exhausted administrative remedies because he feared that waiting any longer to file would have taken him out of the statute of limitations for his

claims. Plaintiff does not dispute any of the facts set forth in Defendants' Separate Statement of Undisputed Material Facts in Support of Motion for Summary Judgment.

## IV. LEGAL STANDARDS

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Albino v. Baca* ("*Albino II*"), 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If there is a genuine dispute about material facts, summary judgment will not be granted.") A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The Court may consider other materials in the record not cited to by the parties, but is not required to do so. Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). In judging the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011).

## V. UNDISPUTED FACTS RELEVANT TO THIS MOTION

The State of California provides its prisoners and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal.Code Regs. tit. 15 § 3084.1(a). The process is initiated by submitting a CDCR Form 602. *Id*. at § 3084.2(a).

California prisoners are required to submit appeals to the first level of appeals within thirty calendar days of the event being appealed. *Id*. at §§ 3084.7(a), 3084.8(a). Three levels

of appeal are involved. *Id*. at § 3084.7. The appeal must be adjudicated at the third level of review to exhaust administrative remedies. *Id*. at § 3084.7(d)(3).

Plaintiff does not dispute the material facts Defendants provide in their Separate Statement of Undisputed Material Facts. (ECF No. 46-2.) Plaintiff claims that:

- On July 13, 2012, Sherwood took Plaintiff outside of his housing unit and slammed Plaintiff's face into the wall, chipping Plaintiff's front tooth;

- On July 23, 2012, Sherwood slapped Plaintiff in the face shortly after discovering that Plaintiff had filed a medical appeal to fix his tooth;

- On July 23, 2012, Sherwood followed Plaintiff outside, pepper-sprayed him without provocation, took him down to the ground, and punched and kicked him. Coontz allegedly looked on and did nothing; and,

- On July 23, 2012, after he had been taken to receive medical treatment, Sherwood, Coontz, and Felix assaulted him.

Based on these events, Plaintiff received an RVR on September 17, 2012 for resisting a peace officer—the officers contended that Plaintiff resisted a random search and it was necessary to use force to gain control. Between July 12, 2012 and October 1, 2013, Plaintiff filed only two non-medical appeals at CCI: Appeal No. CCI-0-12-02710 (the "2710 Appeal") and Appeal No. CCI-0-13-01125 (the "1125 Appeal"), both of which challenged the RVR. Neither the 2710 Appeal nor the 1125 Appeal were accepted for review at the third level of review at the time Plaintiff filed his initial Complaint, a fact that Plaintiff acknowledges in the TAC.

**A. The 2710 Appeal**

The 2710 Appeal was first filed on November 1, 2012. In that appeal, Plaintiff was challenging a Rules Violation Report that found him guilty of a Division D rules violation.[2] The 2710 appeal was then rejected at the second level of review on multiple occasions and for multiple reasons:

---

[2] The precise scope of the violation is not apparent; CDCR's records only describe the category of the issue on appeal and CDCR does not (or did not, at the time of this appeal) retain a copy of the Form 602 used to file the appeal. Neither party argues that the scope of the appeal did not relate to the conduct in question, however.

5

- On November 13, 2012 after Plaintiff failed to attach a copy of the RVR that he was appealing;[3]

- On November 21, 2012 because Plaintiff had not yet received a response to his appeal from the first level;

- On December 27, 2012 because Plaintiff again failed to attach a copy of the RVR that he was appealing;

- On January 28, 2013 after Plaintiff again failed to attach a copy of the RVR and other supporting documentation; and,

- On March 15, 2013 because Plaintiff submitted the form in pencil, rather than ink.

In the letter rejecting his appeal on January 28, 2013, the appeals coordinator also noted that Plaintiff's appeal appeared to include allegations of staff misconduct. The letter advised Plaintiff that the staff misconduct issue is "separate from the disciplinary appeal and cannot be addressed on the same appeal." Plaintiff was provided instructions on how to file a staff misconduct appeal and informed that he would need to "include facts as to who was involved and what actions they took" in the challenged misconduct. (Declaration of J. Wood in Support of Defendants' Motion for Summary Judgment ("Wood Decl."), Exh. B, pg. 14, ECF No. 46-3.)[4]

On May 10, 2013, Plaintiff's appeal was finally denied on its merits at the second level of review. Plaintiff appealed to the third level of review on May 20, 2013. Between July 3, 2013 and January 2, 2014, Plaintiff's appeal was screened out multiple times because Plaintiff had failed to attach the required documents to the appeal form. Each time, Plaintiff resubmitted his appeal. Plaintiff had not received a final decision adjudicating his appeal on the merits at the time he filed his initial Complaint on October 1, 2013. At some point between December 2013 and March 2015, Plaintiff filed an amendment to the 2710 Appeal that specifically named Coontz, Felix, and Sherwood.[5] The 2710 Appeal was cancelled on June 3, 2014, when the Office of Appeals determined that the appeal had not been timely filed. Ultimately, Plaintiff

---

[3] Plaintiff also apparently filed his appeal at the second level before he received a response to his first level appeal.
[4] Page numbers are identified by the CM/ECF generated number located in the upper right hand corner of each page or the Bates stamp, where available.
[5] The exact date the amendment was submitted is unclear from the face of the form.

challenged the cancellation, prevailed, and received a final denial of his appeal from the third level of review on June 3, 2015. (Declaration of M. Voong in Support of Defendants' Motion for Summary Judgment ("Voong Decl."), Exh. A, ECF No. 46-4.)

### B. The 1125 Appeal

The 1125 Appeal was first "filed" on May 22, 2013 and took the form of a short letter that was mailed to the CCI appeals office. (Wood Decl., Exh. C, pg. AGO.047-48, ECF No. 46-3.) On May 31, 2013, the letter was screened at the second level and cancelled because it was untimely. It was also cancelled because it was not filed on the appropriate appeal form. (Wood Decl., Exh. C, pg. AGO.055, ECF No. 46-3.) The letter cancelling the appeal explained that Plaintiff could file a separate appeal challenging the cancellation decision. CDCR records show that the 1125 Appeal was never appealed to the third level.

## VI. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

### A. Legal Standards

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Prisoners are required to exhaust their available administrative remedies *before* filing suit. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

In a summary judgment motion for failure to exhaust administrative remedies, the defendants have the initial burden to prove "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino II*, 747 F.3d at 1172. If the defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id*. The ultimate burden of proof remains with defendants, however. *Id*. "If material facts are disputed, summary

judgment should be denied, and the district judge rather than a jury should determine the facts." *Id*. at 1166.

An untimely or otherwise procedurally defective appeal does not satisfy the exhaustion requirement. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). When an inmate's administrative grievance is improperly rejected on procedural grounds, however, exhaustion may be excused as "effectively unavailable." *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010); *see also Nunez v. Duncan*, 591 F.3d 1217, 1224–26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); *Ward v. Chavez*, 678 F.3d 1042, 1044-45 (9th Cir. 2012) (exhaustion excused where futile); *Brown v. Valoff*, 422 F.3d 926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at second level and no further relief was available).

The test to decide whether a grievance procedure was "effectively unavailable" uses an objective standard. *Albino v. Baca* (*Albino I*), 697 F.3d 1023, 1035 (9th Cir. 2012). "[A]ffirmative actions by jail staff preventing proper exhaustion, even if done innocently, make administrative remedies effectively unavailable." *Id.* at 1034. An inmate may demonstrate unavailability of remedies by showing "(1) that jail staff affirmatively interfered with his ability to exhaust administrative remedies or (2) that the remedies were unknowable." *Id.* at 1033. The inmate must make "a good-faith effort" to determine and comply with a prison's grievance procedures. *Id.* at 1035.

### B.      Application of Law to Undisputed Facts

Defendants argue that Plaintiff failed to exhaust his administrative remedies for his claims against them because Plaintiff had not exhausted appeals between the date of the incident and the time he filed the Complaint. Defendants argue that Plaintiff's failure to follow CDCR regulations deprived CCI and CDCR of the opportunity to correct their own mistakes before defending a lawsuit, which does not comport with the intent of the PLRA.

Defendant provides evidence that between July 12, 2012 and October 1, 2013, Plaintiff filed only two CDCR non-medical appeals. (UF 10; Wood Decl. ¶15.) Neither appeal was accepted and decided at the third level of review at the time the Complaint was filed. (UF 11, 12; Voong Decl. ¶¶ 7, 8; TAC at 2, ECF No. 27.) There is thus no dispute that Plaintiff had not exhausted his administrative remedies for his claims to the final level of appeal using CDCR's appeals process.

Plaintiff contends, however, that: (1) CDCR failed to decide his appeal in a timely fashion, constructively denying his appeal at the time the Complaint was filed; and (2) he was required to file his Complaint before exhausting administrative remedies to avoid exceeding the statute of limitations for his claim.

Under CDCR's governing regulations, a response to an inmate's third level appeal "shall be completed within 60 working days from date of receipt." Cal. Code Regs. tit. 15, § 3084.8(c)(3). The regulations allow an appeal response to exceed this limit only for specifically enumerated reasons. *Id.* at 3084.8(d). "Time limits for reviewing appeals" begin to run on "the date of receipt of the appeal form by the appeals coordinator." *Id.* at 3084.8(a). The regulations do not require that an appeal be ultimately decided within these limits; they only require that the appeal "be responded to and returned to the inmate or parole by staff." *Id.* at 3084.8(c).

Plaintiff's third level appeal in the **2710 Appeal** was filed on May 20, 2013. (UF 24; Wood Decl. ¶ 16.) Under the regulations, CDCR was obligated to respond no later than 60 working days later: August 12, 2013. The appeal was initially rejected, however, on June 11, 2013 because it did not attach the required documents. (Voong Decl. ¶ 11, Exh. A, pg. AGO.002.) Plaintiff was notified of this by letter. *Id.* at AGO.171. Plaintiff re-filed his third level appeal on July 3, 2013, but it was again rejected for the same reason on July 16, 2013. *Id*. Plaintiff was again notified of this event by letter. *Id.* at AGO.172. This process repeated itself several times between May 20, 2013 and October 1, 2013, the date Plaintiff filed the

Complaint. In none of these instances did more than 60 working days elapse between the dates the 2710 Appeal was received by CDCR and the dates CDCR rejected it.[6] *Id.* Thus, at the time Plaintiff's Complaint was filed, CDCR had responded to the 2710 Appeal (albeit by rejecting the appeal on multiple occasions and inviting Plaintiff to resubmit it) in a timely manner.

Notably, Plaintiff asserts in a supplemental opposition, requested by the Court, that he did not receive these rejections and also that they provided baseless excuses to delay the grievance process. (ECF No. 72.) Plaintiff points to the fact that the prison failed to include copies of the rejections. Plaintiff does not provide a sworn declaration that he never received the letters and the Court is left only with evidence, albeit not completely satisfying evidence, that the prison did respond in the time period required. Defendants have thus met their burden of proof. That said, the Court is troubled by the CDCR's position. Given the importance of the exhaustion requirement, it would seem more than reasonable to keep copies of the critical documents in the grievance process. Moreover, certain of the CDCR's reasons for the delays in processing the appeal are dubious, at best. For instance, the appeal was rejected in one instance because Plaintiff wrote in pencil rather than pen, despite the limited writing implements available to someone such as Plaintiff. Given this record, and the fact that Plaintiff is free to file a new complaint now that the grievance process has concluded, the Court has found that Defendant is entitled to summary judgment. That said, the Court looks skeptically on the CDCR's responses during the grievance process that appear to delay the process, rather than make a good faith attempt to resolve the issue.

---

[6] Eventually, on June 3, 2014, the 2710 Appeal was cancelled. (UF 26; Wood Decl. ¶ 17, Exh. B, pg. AGO.039.) Plaintiff successfully challenged this cancellation, however, and the 2710 Appeal was accepted for review on March 12, 2015. (UF 30; Voong Decl. ¶ 15, Exh. B, pg. AGO.002.) It was then denied on June 3, 2015, 59 working days after its receipt by the appeals coordinator. *Id.* Because exhaustion is determined as of the time the Complaint was filed, however, the Court determines whether administrative remedies were "effectively unavailable" at "the time the claims are first asserted." *Rupe v. Beard*, No. CV-08-2454-EFS (PC), 2013 WL 2458398, at *15 (E.D. Cal. June 6, 2013), *citing Rhodes v. Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) ("a prisoner must exhaust his administrative remedies for the claims contained within his complaint before that complaint is tendered to the district court.").

Even if each rejection of the 2710 Appeal did not count as a "response" and CDCR's ultimate determination had thus been untimely, however, administrative remedies were not "effectively unavailable" to Plaintiff at the time he filed his Complaint and his appeal was not constructively denied. The Ninth Circuit has stopped short of deciding that "an untimely response by prison appeals administrators provides a blanket excuse for a prisoner's failure to exhaust," although an "unjustified delay in responding to a grievance, 'particularly a time-sensitive one, may demonstrate that no administrative process is in fact available.'" *Womack v. Bakewell*, No. CIV S-09-1431 GEB KJM P, 2010 WL 3521926, at *4 (E.D. Cal. Sept. 8, 2010), *quoting Brown v. Valoff*, 422 F.3d 926, 943 n. 18 (9th Cir. 2005). "Prison officials' failure to meet deadlines for responding to an appeal does not render the inmate's remedies unavailable per se; rather how the process actually unfolds in a particular case is critical to the analysis." *Id.* at *5. Thus, "an inmate can show that administrative remedies are effectively unavailable if 1) prison officials have failed to timely respond to a grievance, 2) the inmate has received no notice of or justification for the delay, and 3) the inmate has no other available avenues to seek administrative relief." *Rupe v. Beard*, No. CV-08-2454-EFS (PC), 2013 WL 2458398, at *15 (E.D. Cal. June 6, 2013).

In this instance, Plaintiff received multiple letters rejecting the 2710 Appeal because he had failed to attach the required documents. Each of these letters contained language advising Plaintiff that he could take corrective action and resubmit his appeal for consideration, which would have provided him notice and justification for the delay in resolving his appeal. (Voong Decl. ¶ 16, Exh. C, pg. AGO.173 ("Be advised that you cannot appeal a rejected appeal but should take the corrective action necessary and resubmit the appeal within the timeframes specified in CCR 3084.6(a) and CCR 3084.8(b).").) This language also apprised Plaintiff of further available avenues for him to seek administrative relief (*e.g.*, the resubmission of the appeal). In fact, Plaintiff appears to have pursued these avenues, resubmitting the appeal on multiple occasions and even successfully challenging the eventual cancellation of the appeal.

11

Similarly, the **1125 Appeal** was cancelled at the second level of review on May 31, 2013.  (Wood Decl. ¶ 22, Exh. C, pg. AGO.055.)  Plaintiff was advised in the cancellation letter that he could file a separate appeal on the cancellation decision.  *Id*.  Plaintiff contends that he appealed this decision, but did not receive a response until June 2014.  (Opposition Brief 2, ECF No. 50 ("Plaintiff submitted the dissatisfaction of the Second level to the Third level. No response was ever given to Plaintiff until 13 months later.").)  But this appears to conflate the 2710 Appeal (for which Plaintiff did receive a third level response in June 2014) with the 1125 Appeal (which does not appear to have ever been to the third level).  (Voong Decl. ¶ 15, Exh. B, pg. AGO.002-3.)  Despite the fact that each appeal contains related facts, however, they are independent filings and were treated as such by the CDCR.  Because Plaintiff still possessed an avenue to pursue the remedy he sought in the 1125 Appeal (*e.g.*, an appeal of the cancellation decision) and simply chose not to pursue it, administrative remedies were not "effectively unavailable" to him.

Finally, Plaintiff contends that he was compelled to file his Complaint when he did to avoid exceeding the statute of limitations on his claims.  But this does not justify a failure to exhaust administrative remedies.  First, Plaintiff would not have exceeded the statute of limitations on his claims had he filed later than October 1, 2013, since the events alleged in his Complaint occurred in July 2012.  *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 701 n. 3 (9th Cir. 2009) ("Claims under § 1983 are subject to the state statute of limitations for personal injury claims. In California, that state rule is two years.").  Second, even if he had waited to file the Complaint, the statute of limitations would have been equitably tolled while Plaintiff exhausted his administrative remedies.  *Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005) ("we agree with the uniform holdings of the circuits that have considered the question that the applicable statute of limitations must be tolled while a prisoner completes the mandatory exhaustion process.").

///

VII.  **CONCLUSION AND RECOMMENDATIONS**

Based on the foregoing, the Court finds no genuine dispute of material fact that Plaintiff failed to exhaust his administrative remedies for his claims before filing the Complaint, as required by § 1997e(a) of the PLRA.  Accordingly, **IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion to Strike Plaintiff's Surreply (ECF No. 56) be GRANTED and Plaintiff's second opposition brief (ECF No. 54) be STRICKEN;
2. Defendants' Motion for Summary Judgment (ECF No. 46) be GRANTED; and,
3. Plaintiff's case be DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies before filing suit.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty days after being served with these findings and recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 20, 2016**                       /s/ Erica P. Grosjean
                                                                    UNITED STATES MAGISTRATE JUDGE